**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**May 15, 2019**

# In the Court of Appeals of Georgia

A19A0763. A&M HOSPITALITIES, LLC, et al. v.
ALIMCHANDANI.

MILLER, Presiding Judge.

In 1998, Prenita Alimchandani and Jane Motley created A&M Hospitalities,
LLC ("A&M"), a Georgia limited liability company, to develop and operate a hotel
in Lake Park, Georgia. Over the next few years, A&M greatly expanded and
developed many more hotels throughout Georgia, Florida, and Alabama. According
to Alimchandani, however, starting in 2008, Jane Motley and her husband, David
Motley, conducted a campaign to freeze her out of the company, leading her to
initiate this lawsuit to judicially dissolve A&M. As part of the litigation, the trial
court appointed a "limited receiver," whom the court charged with conducting an
audit and inspection of A&M. The Motleys and A&M filed this interlocutory appeal

from that appointment order, arguing that Alimchandani did not demonstrate a clear and urgent need for a receiver and that they did not receive sufficient notice before the superior court appointed the receiver. After a close and careful review of the record, we affirm.

The record shows that Alimchandani and Jane and David Motley jointly created A&M in 1998 to develop and operate a Hampton Inn in Lake Park, Georgia. Originally, Jane Motley owned a 75% interest in A&M and Alimchandani owned 25%. From the beginning, operational control and decision making for A&M was vested with Jane Motley, who was designated A&M's manager. In 2006, half of Jane Motley's 75% interest was transferred to David Motley, and then the interests of Jane and David Motley were both transferred to JDS&J Enterprises, LP, a limited partnership comprising of Jane and David Motley and their children. At the same time, David Motley was made a co-manager of A&M with Jane Motley.

In October 2017, Alimchandani filed the instant lawsuit against the Motleys and A&M (collectively, "the defendants"), seeking the judicial dissolution of A&M and raising claims of breach of fiduciary duties and violations of Georgia's Racketeer Influenced and Corrupt Organization Act ("RICO"), OCGA § 16-14-1, et seq. In her complaint, Alimchandani alleged that between 2008 and 2014, the Motleys

2

misappropriated, wasted, and abused A&M's assets, failed to make required distributions to her as a partner of A&M, failed to provide her with notice of the transfer of Jane Motley's interest to David Motley and JDS&J Enterprises, LP, failed to provide her with required financial information, threatened the employment of Alimchandani's husband (a hotel operations manager at A&M), failed to hold annual meetings, and failed to communicate with her or deal in good faith. Alimchandani alleged that this conduct occurred in an apparent effort to freeze her out of A&M and to transfer business away from A&M to other companies owned by the Motleys and in which Alimchandani did not have an ownership interest.

At the same time that she filed the complaint, Alimchandani also filed a motion for the appointment of a receiver and related injunctive relief, alleging that she would be "subjected to immediate and irreparable injury, loss and damage" if A&M was not placed in a receivership. The defendants answered the complaint and filed a motion to stay discovery and compel arbitration pursuant to an arbitration clause in A&M's operating agreement. The defendants also moved to dismiss the lawsuit for lack of subject matter jurisdiction and due to Alimchandani's alleged failure to satisfy the ante litem requirements of OCGA § 14-11-801.

The trial court conducted a hearing on March 28, 2018, to address the parties' various motions. On April 12, 2018, following the hearing, the trial court judge sent a letter to the parties, stating, "Considering the current nature of the case, I do not think that the business is in such imminent peril that the appointment of a receiver is warranted." However, the trial court said that it would order the defendants "to permit the Plaintiff and an accountant/accounting team to conduct a full audit of [A&M]" and that the "audit shall be entitled to inspect all records pertaining to the businesses as contemplated under OCGA § 14-11-313." The trial court instructed Alimchandani's counsel to prepare a draft order and provide a copy to the defendants for approval.

On May 18, 2018, the trial court judge sent a letter to the parties noting that the parties were still disputing the wording of a proposed order and that the court was "somewhat distressed that the parties ha[d] not begun the audit yet." The trial court judge noted that it was "still not convinced a receivership is needed for the day to day operations of the business." However, the judge indicated his belief that a limited receivership for purposes of the audit and discovery would possibly be necessary and requested any responses to its letter by May 22, 2018.

The parties all filed responses to the letter with their respective proposed orders. The defendants objected to Alimchandani's proposed order because they believed it was a full receivership order and went beyond the trial court's April 12, 2018 letter ordering that an audit occur. Jane and David Motley responded, however, that they were "ready and willing to comply with [the] audit" and that they had uploaded "thousands of documents" in preparation. On May 23, 2018, the trial court responded that it was considering attorney Chris Cohilas for the position of potential receiver and that the court would "allow [the parties] to respond again before any decisions are made."

On May 31, 2018, counsel for David and Jane Motley sent another letter to the court expressing their disapproval of Alimchandani's proposed order, which they alleged amounted to the appointment of an actual receiver and an overturning of the April 12 decision. Counsel further stated that the "[d]efendants are more than happy for such an audit to take place . . . and are ready to comply with any order that the Court wishes to enter in order to accomplish the same." On June 1, 2019, counsel filed the May 31, 2018 letter in the trial court as part of a styled "Supplemental Brief in Continued Opposition to Plaintiff's Request for Appointment of a Receiver."

On July 18, 2018, the trial court entered an order appointing a "limited receiver" and denying the defendants' motions to compel arbitration and dismiss the complaint.[1] The trial court ordered that Chris Cohilas was to be appointed as a "receiver" "for the purposes of audit and discovery." The trial court ordered that Cohilas "shall have full and complete access, at any time, to all real property, personal property, assets, books, records, documents, and accounts" of A&M and that Cohilas "is authorized and directed to retain an accountant, accounting team, and/or legal representatives for the purposes of conducting an audit and inspection" of A&M. The court ordered that A&M "shall not transfer , sell or encumber any real property," or "change membership interests or transfer, sell or encumber shares or other interests," or "transfer assets with a value equal to or greater than $10,000 . . . unless such transfer of assets is done in the ordinary and recurring course of business," without Cohilas's consent. The court ordered that Cohilas "shall attempt to not disturb the ordinary business of the Company, if reasonably possible," and that "[t]he day to day operations of the Company shall remain the responsibility of the duly elected managers of the Company." The order also provided that "[n]either the

---

[1] The trial court's order is very similar, if not identical, to the proposed order Alimchandani submitted in her May 22, 2018 letter.

6

appointment of the Receiver pursuant to this Order nor any actions taken by the Receiver pursuant to this Order or otherwise shall cause or be deemed to cause . . . the Receiver . . . [to] be deemed . . . a lender or mortgagee in possession of the property of the Company." The order also provided numerous provisions for the production of documents and records to aid Cohilas in his inspection.

The defendants timely filed this interlocutory appeal from the trial court's appointment order.[2]

1. The defendants first argue that the trial court erred by appointing the receiver without making a finding that there was a clear and urgent need for such extraordinary relief as placing A&M in a receivership. We disagree, however, because we conclude that the trial court appointed an auditor, not a receiver.

---

[2] In their brief, the defendants allege that the parties have already arbitrated Alimchandani's claims, resulting in a decision in their favor, and that cross-motions to confirm or vacate the arbitral award are currently pending in the trial court. The record on appeal, however, does not contain the parties' motions or any details or documents relating to the outcome of the arbitration, nor does it contain any concrete details on how or whether the auditor's work factored into that arbitration, and so we cannot grant any relief or alter our ruling on this basis. See *Hixson v. Hickson*, 236 Ga. App. 894, 895 (1) (512 SE2d 648) (1999) ("This court cannot consider the factual assertions of the parties appearing in briefs when such evidence does not appear on the record.") (citation omitted). We nevertheless make clear that our opinion should not be read to express any view as to the merits of any of the underlying claims or factual disputes in this case, and we leave it for the trial court to resolve the parties' various motions following remittitur of this appeal.

7

We review the appointment of a receiver, a special master, or an auditor for an abuse of discretion. (Citations omitted.) *Petrakopoulos v. Vranas*, 325 Ga. App. 332, 336-337 (2) (750 SE2d 779) (2013) (reversed in part on other grounds by 296 Ga. 48 (764 SE2d 858) (2014)).

As we have explained previously,

Georgia law distinguishes between the role played by a receiver and an auditor. A trial court may appoint an auditor in all cases "involving matters of account, if the case shall require it," "to investigate the matters of account and report the result to the court." OCGA § 9-7-3. Thus, "unless modified by the order of appointment," an auditor generally is granted the authority "to hear motions, allow amendments, and pass upon all questions of law and fact," including the "power to subpoena and swear witnesses and compel the production of papers." OCGA § 9-7-6. And under OCGA § 9-7-1, the duties previously performed by a "master" in the superior court are now performed by an "auditor," although Uniform Superior Court Rule ("USCR") 46, which was adopted effective June 4, 2009, permits the trial court to appoint a special master to perform certain duties enumerated therein.

Uniform Superior Court Rule 46 lists a number of tasks for which a special master may be appointed, including "to investigate and report to the court on matters identified by the court," USCR 46 (A) (1) (e), "to conduct an accounting," USCR 46 (A) (1) (f), and to "make or recommend findings of fact on issues to be decided by the court without

8

a jury if appointment is warranted by . . . the need to perform an accounting, or to resolve a difficult computation of damages." USCR 46 (A) (1) (h) (ii). The rule also requires that "the court must give the parties notice and an opportunity to be heard before appointing

a master." USCR 46 (B) (1).

In contrast, a receiver is generally appointed "when any fund or property is in litigation and the rights of either or both parties cannot otherwise be fully protected or when there is a fund or property having no one to manage it." OCGA § 9-8-1. Thus, for example, "equity may appoint receivers to take possession of and protect trust or joint property," OCGA § 9-8-2, or to hold "assets charged with the payment of debts where there is a manifest danger of loss, destruction, or material injury to those interested." OCGA § 9-8-3. Additionally, the Georgia Code provides that "the power of appointing receivers should be prudently and cautiously exercised and except in clear and urgent cases should not be resorted to." OCGA § 9-8-4. Although in extraordinary circumstances, "a receiver may be appointed . . . without notice to the . . . person having charge of the assets," OCGA § 9-8-3, "a receiver ordinarily should not be appointed without notice and hearing."

Thus, auditors and special masters primarily assist the trial court in resolving issues in the litigation, while a receiver acts as a guardian over funds or property at issue in the litigation and should be appointed only in clear and urgent cases.

9

(Citations and punctuation omitted). *Petrakopoulos*, supra, 325 Ga. App. at 337-338 (2).

The trial court did not specify under which code section it appointed Cohilas, and the term "limited receiver" is not defined by rule or statute, so we will look to the practical effect of the trial court's order, rather than the specific label used by the court, to determine what the trial court actually did and whether it abused its discretion. Our decision in *Petrakopoulos* is instructive. In that case, we determined that an order appointing a "receiver/special master" was actually an order appointing a special master, not a receiver, because the trial court in that case "[made] no finding that [the] case present[ed] a clear and urgent situation and nothing in the order vest[ed] [the purported receiver] with guardianship of the partnership accounts or its other assets." *Petrakopoulos*, supra, 325 Ga. App. at 338-339 (2). We then evaluated the propriety of the trial court's order using the standards for appointing a special master rather than those used for appointing a receiver. Id.

Here, the trial court's appointment order directs the appointment of Cohilas for the "purposes of audit and discovery," and the clear majority of the order's provisions, as outlined above, are solely related to allowing Cohilas to inspect and audit A&M. Crucially, although the trial court's order refers to Cohilas as a "limited

10

receiver," nothing in the order vests Cohilas with guardianship, ownership, custody, or possession of A&M or its assets. See *Petrakopoulos*, supra, 325 Ga. App. at 338-339 (2). The provisions restricting A&M's ability to take certain actions without Cohilas's consent do not give Cohilas actual or constructive guardianship of A&M: these are instead mechanisms put in place to ensure that no major changes that would have a significant impact on A&M's accounting profile occur during the audit without the auditor's knowledge. There is simply nothing in the trial court's order that grants Cohilas any authority or powers that are particular to, or characteristic of, a receiver. Thus, we conclude that the trial court's order at issue was, in all practical effect, an order appointing an auditor under OCGA § 9-7-3 to "investigate matters of account," rather than one appointing a receiver under OCGA § 9-8-4. As a result, despite the fact that the trial court referred to Cohilas as a "limited receiver," the trial court was not required to find that the case presented a clear and urgent need for a receivership before appointing Cohilas.[3]

---

[3] Our determination that the trial court effectively appointed an auditor under OCGA § 9-7-3 rather than a receiver does not affect our jurisdiction over this appeal. While an order appointing a receiver is specifically allowed by statute, OCGA § 5-6-34 (a) (4), we have similarly concluded that an order appointing an auditor to conduct an accounting is appealable under OCGA § 5-6-34 (a) (3). See *Parmar v. Khera*, 215 Ga. App. 71 (1) (449 SE2d 894) (1994).

11

Moreover, Alimchandani's allegations of malfeasance involve the course of A&M's business over many years. The defendants stated that "thousands of documents" are involved in the audit, and they repeatedly told the trial court that a court-mediated audit was acceptable to them. Given the nature of the record, we cannot conclude that the trial court abused its discretion by appointing an auditor. See *Parmar v. Khera*, 215 Ga. App. 71 (2) (449 SE2d 894) (1994) (trial court did not abuse its discretion by appointing an auditor in a case seeking the dissolution of a partnership); see also *Mendenhall v. Kingloff*, 215 Ga. 726, 727-728 (113 SE2d 449) (1960) (trial court did not abuse its discretion by appointing an auditor because "it is always discretionary with the court in a case involving matters of account to refer it to an auditor"); *Hicks v. Atlanta Trust Co.*, 187 Ga. 623 (3) (1 SE2d 669) (1939) (trial court did not abuse its discretion by appointing an auditor because "the record shows that the case was a proper one for an auditor").

2. The defendants further allege that the trial court abused its discretion by appointing Cohilas as an auditor without providing them further notice and an opportunity to be heard, as the trial court assured them it would in its May 23, 2018 letter, and as required by OCGA § 9-7-3 and USCR 46 (B) (1). We are unpersuaded.

In this case, the first time that the issue of the appointment of an auditor (as opposed to the appointment of a full receiver) arose was in the trial court's April 12, 2018 letter to the parties outlined above. Following that point, the parties corresponded with the court about the details and particulars of the trial court's order, and they had multiple opportunities to object to Alimchandani's proposed order, which was nearly identical to the trial court's eventual appointment order. In particular, we note that the defendants had notice of (1) the appointment of an auditor itself (from the court's April 12, 2018 letter); (2) the terms and scope of the proposed audit order (from Alimchandani's May 22, 2018 submission); and (3) the identity of the proposed auditor (from the court's May 23, 2018 letter), and that the defendants were able to meaningfully respond while in possession of that information so that the court was aware of their position and objections before it ruled. We further note that, during that exchange, the defendants told the trial court at multiple points that an appointment of an auditor under OCGA § 9-7-3 was acceptable. We conclude that, in these circumstances, the defendants had sufficient notice and a meaningful opportunity to be heard before the trial court entered its July 18, 2018 appointment order. See OCGA § 9-7-3; USCR 46 (B) (1); *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 690 (6) (500 SE2d 1) (1998) (party had notice and full opportunity to

13

respond when it had the opportunity to file a brief such that "the trial court had an opportunity to consider all of [the party's] arguments" before handing down the order on appeal).

Accordingly, for the reasons provided, we conclude that the trial court did not abuse its discretion when it appointed Cohilas to conduct an audit of A&M. We therefore affirm the trial court's appointment order.

*Judgment affirmed. Rickman and Reese, JJ., concur.*